UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES PORTER HESTER,

        Petitioner,

                              CASE NO. 05-CV-60040-AA
v.                                HONORABLE MARIANNE O. BATTANI

RAYMOND BOOKER,

        Respondent.
_____/

**OPINION AND ORDER DENYING PETITION**
**FOR WRIT OF HABEAS CORPUS**

**I.  Introduction**

James Porter Hester ("Petitioner"), a state prisoner presently confined at the Ryan Correctional Facility in Detroit, Michigan, has filed a *pro se* petition for writ of habeas corpus challenging his first-degree home invasion and receiving and concealing stolen property over $1,000 convictions which were imposed following a jury trial in the Kent County Circuit Court in 2002.  Petitioner was sentenced as a third habitual offender to 10 to 25 years imprisonment.

In his pleadings, Petitioner challenges the admission of other acts evidence and the admission of DNA evidence at trial.  For the reasons set forth below, the Court denies the petition for writ of habeas corpus.

**II.  Facts and Procedural History**

Petitioner's convictions arise from his invasion and theft of personnel items from a home in Kent County, Michigan on January 24, 2000.  At trial, homeowner Peggy Leven testified that

1

she contacted police on the morning of January 24, 2000 to report that video equipment, a gym bag, personal items, cash, and a Dell laptop computer were missing from her home. The laptop computer was used by Leven for her work with Herman Miller, Inc. and was valued at $1,800 at the time of the incident. Ms. Leven did not observe the perpetrator but believed that he entered the home through an unlocked walkout door. Police investigated the scene and took photographs of footprints exiting the walkout door.

Samuel Garrip, a party store employee, testified that he purchased a laptop computer from Petitioner in 2000 for $200, then sold the computer to his friend, Frank Koekkoek, for the same price. When Mr. Koekkoek took the computer to Shaun Trites for service, Mr. Trites contacted Dell and discovered that the computer was registered to Herman Miller, Inc. and that it had been reported stolen. Mr. Trites informed Mr. Koekkoek of this fact and notified Herman Miller, Inc. The computer was subsequently turned over to the police.

When the computer was recovered, the police began to focus on Petitioner as a suspect in the home invasion. On March 10, 2000, Grand Rapids police officers Mark Waichum and Mike Meinzinger instituted a traffic stop of Petitioner's car because he had expired license plates. They learned that he was driving without a license a placed him under arrest. Two other people, Ricky Seymore and Petitioner's girlfriend Isalene Hill, were in the car at the time of the stop. The police officers searched Petitioner's car with his consent and recovered two pairs of shoes from the trunk, which were identified as being consistent with shoe impressions found at the scene of several area home invasions, including the Leven home. The officers also recovered a camcorder and a watch from the vehicle which were determined to be items stolen from a home in the area.

Grand Rapids Police Captain Kurt Vanderkooi testified that he questioned Petitioner about the stolen laptop computer and the search of his car. During that interview, Petitioner claimed that he bought the computer from Keilon McFarrin for $150 at Andrew Buggs' house and then later sold it to Mr. Garrip for $350. When located, Mr. McFarrin denied selling a computer to Petitioner. Andrew Buggs was unable to confirm Petitioner's story.

During questioning, Petitioner also told the police that the shoes found in his car did not belong to him. He explained that he always had a lot of people visiting his apartment, that he had recently been evicted by his father due to the traffic and noise, and that he had just thrown a bunch of items in his car trunk before the traffic stop. Petitioner's father and another relative corroborated Petitioner's explanation at trial.

The prosecution presented testimony and evidence regarding 10 other home invasions in the area. The evidence was admitted to link the two pairs of shoes found in Petitioner's trunk to the shoe impressions found at several of the home invasions. Additionally, the evidence was admitted to show that various items found in Petitioner's car at the time of his arrest were stolen. A jacket found near one crime scene by a police canine tracking team was admitted into evidence and implicated Petitioner in that home invasion through DNA evidence. The police also conducted a search of the home of Petitioner's girlfriend and recovered a shoe and stolen property connected to several of the home invasions. Petitioner's girlfriend and her brother testified that many people other than Petitioner visited the home.

Christine Stepleton of the Michigan State Police crime lab testified that shoe impressions taken at the scene of several of the home invasions were consistent with size and pattern of the shoes recovered from Petitioner's car. Ann Hunt, a Michigan State Police forensic scientist,

testified about DNA testing which was conducted on the shoes recovered from Petitioner's car and the jacket found near one crime scene. She testified in some detail regarding the testing methodology and the probabilities of Petitioner being a donor of the DNA recovered from those items. She essentially indicated that DNA taken from the shoes and the jacket was consistent with Petitioner's DNA sample. The defense produced an expert witness, Theodore Kessis, to counteract Ms. Hunt's testimony.

Defense counsel objected to the admission of the other acts and DNA evidence before and during trial. The trial court allowed the evidence to be admitted to establish Petitioner's identity, and as evidence of a common plan or scheme. The trial court instructed the jury about the proper use of such evidence.

At the close of trial, the jury convicted Petitioner of first-degree home invasion and receiving and concealing stolen property over $1,000. The trial court subsequently sentenced him as a third habitual offender to 10 to 25 years imprisonment.

Following sentencing, Petitioner filed an appeal as of right with the Michigan Court of Appeals challenging the admission of other acts evidence and the DNA evidence. The Court of Appeals affirmed Petitioner's conviction and sentence. *People v. Hester*, No. 2243636, 2004 WL 316163 (Mich. Ct. App. Feb. 19, 2004) (unpublished). Petitioner also filed an application for leave to appeal with the Michigan Supreme Court, which was denied. *People v. Hester*, 471 Mich. 870, 685 N.W.2d 669 (2004).

Petitioner thereafter filed the present habeas petition, asserting that the admission of the other acts evidence and the DNA evidence denied him a fair trial. Respondent has filed an answer to the petition asserting that it should be denied.

**III.    Analysis**

    **A.    Standard of Review**

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified at 28 U.S.C. § 2241 *et seq.*, govern this case because Petitioner filed his habeas petition after the AEDPA's effective date. *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997). The AEDPA provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d) (1996).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)); *see also Bell v. Cone*, 535 U.S. 685, 694 (2002). "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003)

5

(quoting *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694.  However, "[i]n order for a federal court find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous.  The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409.

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision.  *See Williams*, 529 U.S. at 412; *see also Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003).  Section 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002); *see also Mitchell*, 540 U.S. at 16.  While the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue.  *Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Dickens v. Jones*, 203 F. Supp. 354, 359 (E.D. Mich. 2002).

Lastly, a state court's factual determinations are entitled to a presumption of correctness on federal habeas review.  *See* 28 U.S.C. § 2254(e)(1).  A petitioner may rebut this presumption with clear and convincing evidence.  *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).

**B.** **Other Acts Evidence Claim**

Petitioner first asserts that he is entitled to habeas relief because the trial court erred in admitting other acts evidence of similar home invasions in the area. Respondent contends that this claim is not cognizable upon habeas review.

Alleged trial court errors in the application of state evidentiary law are generally not cognizable as grounds for federal habeas relief. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Serra v. Michigan Dept. of Corrections*, 4 F.3d 1348, 1354 (6th Cir. 1993). Only when an evidentiary ruling is "so egregious that it results in a denial of fundamental fairness," may it violate due process and warrant habeas relief. *See Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003); *Clemmons v. Sowders*, 34 F.3d 352, 356 (6th Cir. 1994). The United States Supreme Court has declined to hold that similar "other acts" evidence is so extremely unfair that its admission violates fundamental conceptions of justice. *See Dowling v. United States*, 493 U.S. 342, 352-53 (1990).[1] Thus, "[t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence." *Bugh*, 329 F.3d 496, 512 (6th Cir. 2003). Consequently, there is no Supreme Court precedent that the state court decisions could be deemed "contrary to" under 28 U.S.C. § 2254(d)(1). *Id*. at 513; *see also Adams v. Smith*, 280 F. Supp. 2d 704, 716 (E.D. Mich. 2003). Petitioner's claim must fail.

Furthermore, even if Petitioner states a cognizable claim, he is not entitled to relief in this case. The Michigan Court of Appeals upheld the trial court's determination that the

---

[1]While the Supreme Court has addressed whether prior acts testimony is permissible under the Federal Rules of Evidence, *see Old Chief v. United States*, 519 U.S. 172 (1997); *Huddleston v. United States*, 485 U.S. 681 (1988), it has not explicitly addressed the issue in constitutional terms.

disputed evidence was properly admitted as evidence of Petitioner's identity, as well as evidence of a common scheme or plan. The Court of Appeals further noted that the trial court lessened the risk of unfair prejudice by instructing the jury about the proper use of the challenged testimony. *See Hester*, 2004 WL 316163 at *1-2.

The Michigan Court of Appeals' decision is neither contrary to United States Supreme Court precedent nor an unreasonable application of federal law or the facts. The disputed evidence was properly admitted under Michigan law to establish Petitioner's identity as the perpetrator of a signature crime, and as evidence of a common scheme or plan. The prosecutor did not make a character or propensity argument and the trial court issued a cautionary instruction to the jury about the proper consideration of the evidence. Petitioner has not shown that the admission of the other acts evidence rendered his trial fundamentally unfair. He is thus not entitled to habeas relief on this claim.

### C. DNA Evidence Claim

Petitioner next asserts that he is entitled to habeas relief because the trial court erred in admitting the DNA evidence because it was not material and he was not given a fair opportunity to test the evidence. Respondent contends that this claim is not cognizable and lacks merit.

As noted, alleged trial court errors in the application of state evidentiary law are generally not cognizable as grounds for federal habeas relief. *See Estelle*, 502 U.S. at 67-68; *Serra*, 4 F.3d at 1354. Only when an evidentiary ruling is "so egregious that it results in a denial of fundamental fairness," may it violate due process and warrant habeas relief. *See Bugh*, 329 F.3d at 512.

In this case, the Michigan Court of Appeals concluded that the trial court properly admitted the evidence because it was relevant and Petitioner's challenges went to the weight, not the admissibility, of the evidence. The Court of Appeals explained that the DNA evidence from the shoes and from a jacket found near a home invasion linked Petitioner to the uncharged crimes and that the DNA evidence in a pair of shoes was consistent with Petitioner's DNA and those shoes were of similar size and pattern to shoe impressions found near the scene of the charged crime. *See Hester*, 2004 WL 316163 at *2. The Court of Appeals declined to address Petitioner's other challenges to the DNA evidence because Petitioner failed to properly brief those issues. *Id.*

The Michigan Court of Appeals' decision is neither contrary to United States Supreme Court precedent nor an unreasonable application of federal law or the facts. The DNA evidence was relevant and properly admitted under Michigan law. Petitioner had ample opportunity to challenge the DNA evidence at trial and utilized his own expert witness to counter the prosecution's expert testimony. Also, the record indicates that Petitioner was given an opportunity to conduct independent DNA testing, but the lab was unable to conduct the tests due to insufficient material. Additionally, there was significant evidence implicating Petitioner in the charged offense, including the shoe impressions found at the scene which were consistent with shoes found in Petitioner's car and the testimony linking Petitioner to the stolen laptop computer. Petitioner has not shown that the admission of the DNA evidence rendered his trial fundamentally unfair. Habeas relief is not warranted on this claim.

**IV.     Conclusion**

For the reasons stated, this Court concludes that Petitioner is not entitled to federal habeas relief on the claims presented in his petition.

Accordingly;

**IT IS ORDERED** that the petition for writ of habeas corpus is **DENIED WITH PREJUDICE**.

        s/Marianne O. Battani
        MARIANNE O. BATTANI
        UNITED STATES DISTRICT JUDGE

DATED: June 2, 2006

### CERTIFICATE OF SERVICE

Copies of this opinion and order were served upon all parties by ordinary mail and/or electronically.

        s/Bernadette M. Thebolt

        Deputy Clerk